## RICHARD D. WEIBLEN v. LAWYERS' TITLE GUARANTY OF MINNESOTA AND ANOTHER.

222 N. W. 2d 282.

October 4, 1974—No. 44623.

*Richard D. Weiblen,* pro se, for appellant.

*Harstad & Rainbow* and *C. Blaine Harstad,* for respondent.

Heard before Sheran, C. J., and Otis and Peterson, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

Richard Weiblen, as shareholder of Lawyers' Title Guaranty of Minnesota (LTGM), has brought this action seeking (1) an injunction enjoining the commissioner of insurance from acting upon the application of Attorneys' Title Guaranty Fund, Inc., (the Fund) to become a licensed insurer;[1] and (2) a declaration that a sale and purchase agreement is null and void.[2] Weiblen appeals from a judgment of the Hennepin County District Court dismissing his complaint. We affirm.

The sole issue is whether LTGM's board of trustees had the power to enter into a sale and purchase agreement by which Fund became a bar-related title insurer in Minnesota.

The facts are undisputed. LTGM was formed in 1961 as a business trust to create a vehicle through which practicing attorneys could issue title insurance policies for their clients.[3] Richard D. Weiblen was instrumental in the formation of LTGM and became its president. LTGM has not made a profit for several years and has never issued dividends to its members or shareholders. An insurance commissioner's audit in early 1972 showed that the business was rapidly declining and that capital stock would be impaired by December 31, 1972, unless action was taken to stimulate production.

On January 22, 1972, the board of trustees of LTGM voted to enter into a sale and purchase agreement with the Fund, a Colo-

---

[1] The commissioner of insurance has not appeared in this action because he was not properly served. This issue is now moot since the commissioner granted the application of the Fund to operate as a Minnesota insurer on June 19, 1973.

[2] The court found that this was not properly a class action, and plaintiff has not raised this issue on appeal.

[3] Initially, it was proposed that the shareholders of LTGM be only attorneys. However, sale of stock to attorneys did not raise sufficient funds to create the necessary statutory guarantee fund of $200,000 plus money for operating capital. Therefore, in 1963 shareholder status became open to the public, although nonattorneys could not become "members" and vote for the board of trustees.

rado corporation not a party to this suit.[4] The agreement, dated May 1, 1972, provided that LTGM would purchase 500 shares of stock in the Colorado corporation to increase the Fund's capital and the Fund would qualify as a Minnesota title insurer in Minnesota and take over the business of LTGM. The stated purpose was "to sell to LTGM at least 500 shares of the Fund's Class B Common Stock in order that LTGM may become the representative of such practicing lawyers of Minnesota who become title insurance agents of the Fund." The Fund agreed to offer the attorney-agents of LTGM an opportunity to write policies through the Fund and to retain their status as agents of the Fund which then became the bar-related title insurance company in Minnesota.[5]

---

[4] Since the Fund was not made a party to this action, a declaration by this court that the sale and purchase agreement was void would not be binding upon the Fund.

[5] The following provisions of the sale and purchase agreement relate to respondent LTGM's status and the principles of the Fund:

"9. *Covenants of LTGM.* Upon admission of the Fund as a foreign title insurer in Minnesota, and its commencement of operation pursuant thereto, LTGM will discontinue all activities as a title insurer in Minnesota except:

"(a) handling of claims under outstanding LTGM policies, which policies are then outstanding;

"(b) arranging for reinsurance or assumption of liability on outstanding LTGM policies if such be desired by LTGM;

"(c) accepting title insurance risks ceded by the Fund on Minnesota property. The Fund agrees to cede such risks to LTGM as may be necessary to satisfy legal or regulatory requirements for keeping LTGM's issuing powers alive; and

"(d) such other specific activities as may be approved by the Fund.

\* \* \* \* \*

"12. *Miscellaneous Provisions.*

\* \* \* \* \*

"(h) *Construction and Operational Principles.* This Agreement shall be construed and enforced in accordance with the laws of Colorado. It is further understood that it is the Fund's purpose, in making this Agreement, to provide Fund title insurance in Minnesota exclusively through

On September 16, 1972, LTGM paid $62,500 for the purchase of the Fund's stock and in November 1972 this action was commenced. Although neither of the defendants was properly served with notice, LTGM voluntarily appeared and the matter was submitted on a stipulated record. On June 12, 1973, the trial court ordered judgment dismissing Weiblen's complaint. On June 19, 1973, the commissioner of insurance granted the application of the Fund to operate as a title insurer in Minnesota, and the Fund has been operating as such ever since.

It is Weiblen's contention that under the declaration of trust the trustees of LTGM lacked authority to enter into the sale and purchase agreement. The thrust of his argument is that LTGM was obliged to continue operating as a title insurer because that was its avowed purpose [6] and that consequently the trustees could not put LTGM out of business.

Since LTGM was created as a "pure trust" with all control vested in the trustees, we hold that the trustees were authorized to enter into the sale and purchase agreement on behalf of LTGM. The following provisions of the declaration of trust confer such authority:

"Section 4. PURE TRUST CREATED: The Trust created by this DECLARATION OF TRUST shall be a pure trust. * * * No Member

---

lawyers. It is understood that the operation of the Fund shall be consistent with the broad principles set forth in the pamphlets published by the American Bar Association Special Committee on Lawyers' Title Guaranty Funds * * *."

[6] The purpose of LTGM is found in section 3 of the declaration of trust:

"Section 3. PURPOSE AND KIND OF INSURANCE TO BE TRANSACTED: The purpose of this business trust is to establish and maintain a fund for guaranteeing and insuring titles to, interest in, and liens upon, real estate, through Members and authorized officers of The Trust. The kind of business of insurance that this business trust shall transact in the State of Minnesota is to insure owners and others interested in real estate against loss or damage, by reason of defective titles, encumbrances, or otherwise."

308

of The Trust or Shareholder shall have any right, title, or interest in and to any of the Trust's assets, except as herein provided, and the Members of the Trust and Shareholders shall have no right of control or management of the trust estate or activities * * *."

"Section 13. TITLE AND CONTROL OF BOARD OF TRUSTEES: The Board of Trustees shall have sole title to the assets that come under the Trust hereby created, and, subject to the provisions of this DECLARATION OF TRUST, shall have full control and management of the Trust's assets and affairs."

"Section 35. RIGHTS, TITLE AND POWERS OF SHAREHOLDERS AND MEMBERS: The ownership of shares of beneficial interests in The Trust shall not entitle the Shareholder or Member to any title in or to the trust property whatsoever or right to call for a partition or division of same, or for an accounting, or for any voice or control whatsoever of the trust property or of the management of said property or business connected therewith by the Board of Trustees."

"SECTION 46. POWERS: The Board of Trustees shall have all the powers necessary, convenient, incidental, or appropriate to effectuate the purposes of this Trust and may take any action which it deems necessary or desirable and proper to carry out such purposes. Any enumeration of specific duties and powers in this DECLARATION OF TRUST *shall not be construed in any way as a limitation upon the general powers hereby conferred on the Board of Trustees.* Any determination of the purposes of this Trust made by the Board of Trustees in good faith shall be conclusive. In construing the provisions of this DECLARATION OF TRUST, the presumption shall be in favor of the grant of powers to the Board of Trustees." (Italics supplied.)

"Section 47. INCORPORATION OF TRUST: The Board of Trustees by the unanimous vote of all the members of the Board of Trustees may, at any time it seems to the Board of Trustees judicious to do so, organize a corporation for the purpose of taking over the entire business and assets of this Trust and transfer

and convey the entire business and assets of this Trust to the corporation."

The trustees acted in good faith to preserve trust assets, and the result is the continued operation of a bar-related title insurance company in Minnesota. Neither the declaration of trust nor the Minnesota enabling statutes, Minn. St. 318.02, subd. 3, and Minn. St. cc. 60A and 60B, required LTGM to continue in business until its assets were depleted. On the contrary, it was clearly the duty of the trustees to take whatever steps were appropriate to protect the investment of those for whom they were acting in a fiduciary capacity. The trial court correctly held that the trustees discharged that obligation with fidelity.

Affirmed.

MR. JUSTICE KELLY, MR. JUSTICE TODD, and MR. JUSTICE MAC-LAUGHLIN took no part in the consideration or decision of this case.